for milling purposes, which water privilege was limited in amount by the agreement, and was to be used only for the mill now standing below the dam. In the last-named agreement, Mrs. Greig "released and discharged all claims, easements, privileges, and rights in said agreement contained" (that is, in the agreement creating the pond), "except such only as is hereinbefore expressly mentioned as being reserved." The right reserved as above indicated was the privilege of using a limited supply of water from the pond for milling purposes. Every other right, privilege, and easement contained in the original agreement was released. The claim on behalf of the defendants is that the rights to boat and to fish upon the portion of the pond over the lands of Greig, which was where the signs were removed and the fishing done by the defendants, were not rights obtained by virtue of the original agreement creating the pond, but were rights incident to the ownership of the land. I think, however, that this contention is not well founded. If the pond had not been created, there could have been no boating and no fishing upon the Greig portion of the land; for prior to the original agreement and the erection of the dam there was no water upon the Greig lands, and in the agreement providing for the creation of the pond a provision is inserted for the benefit of Greig, giving him the right of the use of the water created by the dam as a highway, and for fishing and boating purposes. These were rights he secured by reason of the agreement creating the pond, and the erection of the dam thereunder, and were rights, therefore, that Mrs. Greig released in the language above quoted from the last agreement. If my construction of these two instruments is correct, the plaintiff had obtained, by reason of the last agreement, the right to the exclusive control of this pond for all boating and fishing purposes, and therefore the acts of the defendants were unlawful interferences with the plaintiff's rights. She is therefore entitled to judgment for the stipulated amount of damages, with costs.

Judgment for plaintiff, with costs.

---

(6 App. Div. 268)

## FINAN v. O'DOWD.

(Supreme Court, General Term, Second Department. June, 1896.)

LIMITATIONS OF ACTIONS—COMMENCEMENT OF ACTION—PLURIES SUMMONS.
   Under Code Civ. Proc., § 2883, providing that, where it appears by the return of the constable to whom a summons was issued for service that it was not served, a second summons may be issued, and; on a like return thereof, a third summons may be issued, and that the second or third summons, as the case may be, relates back to the time when the first summons was issued, a third summons does not relate back unless the first and second were not served on defendant.

Appeal from Queens county court.

Action by Catherine Finan against John O'Dowd. A judgment in favor of plaintiff, rendered by a justice of the peace, was reversed by the county court, and plaintiff appeals. Affirmed.

The opinion of County Judge GARRETSON is as follows:

This action was brought in a justice's court to recover a sum of money al-. leged to be due to the plaintiff, for goods sold and delivered by her to the de-. fendant between July 12, 1889, and September 21, 1889, and for interest thereon from the date last mentioned. The summons under which the parties came into court was issued by the justice on October 30, 1895, and made returnable on November 8th thereafter, on which latter day the defendant answered the plaintiff's complaint, by pleading a general denial and the statute of limitations. It appears from the return of the justice that for the same cause of action a summons was issued by him on September 10, 1895, which summons was "dismissed" by him upon consent, on the 25th day of the same month, whereupon a second summons was issued, and served upon the defendant, which was subsequently, and on October 30, 1895, also "dismissed" by the justice; and that thereupon a third summons, and the one under which issue was joined, the trial had, and the judgment rendered, was issued, and thereafter served.

The only question urged upon the argument of the appeal is presented by the defendant's plea that more than six years had elapsed after the cause of action had accrued at the time this action was commenced, and that the adverse holding of the justice upon this contention calls for a reversal of the judgment. The defendant claims that the action was not commenced until October 30, 1895, and six years, two months, and nine days after September 21, 1889, when a cause of action upon the claim first became available to the plaintiff. The plaintiff, on the other hand, insists that the time of its commencement relates back to September 10, 1895, the date upon which the first summons was issued. The determination of this appeal, therefore, rests upon the question whether the action was commenced on the day when the first or the third summons was issued, and the construction and effect of the sections of the Code of Civil Procedure applicable to the facts relative thereto as presented by the return of the justice.

An action is commenced before a justice of the peace either by the voluntary appearance and joinder of issue by the parties, or by the service of a summons. Code Civ. Proc. § 2876. An attempt to commence an action in such court is equivalent to the commencement thereof, when the summons is delivered to an officer authorized to serve the same within the city or town wherein the person to whom it is directed resides, provided that actual service is made with due diligence. Id. §§ 398–400. It is also provided that, where it appears by the return of the constable to whom a summons has been duly issued for service that it was not served for any cause, a second summons may be issued by the same justice, in the same action, within 20 days after the first summons was issued, and, upon the like return thereof, a third summons may be issued within 20 days after the second was issued, and that the second or third summons, as the case may be, relates back to the time when the first summons was issued; and, with respect to all proceedings before actual service, the service thereof has the same effect as if the first summons has been reasonably served. Id. § 2883. In any case where a summons is issued by a justice, and not served upon a defendant, the process becomes inoperative and of no effect, if the provisions of section 2883, above cited, are not successfully availed of. It will be observed that, under the section last mentioned, a second or third summons can be issued only in a case where it appears by the return of the constable that the first or first and second summonses were not served for any cause. Whether the first summons mentioned in the return of the justice was in fact served does not appear, although such may be inferred, because it was "dismissed" by reason of an irregularity by consent of the parties. It does appear, however, that the second summons was served, and that it was thereafter also "dismissed" by the justice. We are of the opinion that the first and second summonses were respectively inoperative and of no effect; that they have no relation to the third summons, and are no part of the proceedings in this action (which was commenced on the 30th day of October, 1895, and more than six years after the cause of action had accrued); that the summons issued on that day was an original summons, and not an "alias" summons, under section 2883; that the statute of limitations was therefore an effective bar to the prosecu-

tion of the plaintiff's claim; and that the judgment appealed from must be reversed.

Let judgment of reversal be entered hereon by the clerk accordingly, with costs to the appellant.

Argued before BROWN, P. J., and CULLEN, BARTLETT, and HATCH, JJ.

George Brush, for appellant.
Matthew J. Smith, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of the county judge.

━━━━━━━━

(17 Misc. Rep. 169)

## CONVERSE et· al. v. SICKLES.

(Supreme Court, Special Term, New York County. May, 1896.)

RESCISSION OF SALE—FRAUD OF BUYER—STATEMENTS TO MERCANTILE AGENCY.
    A merchant who gives to a mercantile agency a statement as to his financial condition thereby authorizes the agency to communicate such statement to its customers; and, if false, it is a fraud, for which a sale made to the merchant in reliance on information obtained from the agency may be rescinded by the seller.

Action by Edmund W. Converse and others against Daniel E. Sickles, as sheriff, to charge defendant, as trustee for plaintiffs, with the proceeds of certain merchandise. Judgment for plaintiffs.

Carter, Hughes & Kellogg, for plaintiffs.
Hays & Greenbaum, for defendant.

BEACH, J. This case has been once considered by the court of appeals, and plaintiffs' right to maintain the action was firmly established. Converse v. Sickles, 146 N. Y. 200, 40 N. E. 777. The opinion of the learned court leaves for disposition on the new trial ordered the question whether or not the sale and delivery of the merchandise by plaintiffs to Fecheimer, Rau & Co. between January 29 and May 1, 1890, was induced by fraudulent representations made by the purchasers to and relied upon by plaintiffs. The moneys now in the hands of defendant were paid in by plaintiffs as representing the merchandise taken by them in replevin, which suits failed from lack of demand for return before action brought. A second question was raised on the trial relating to the identity of the goods replevied with those sold and delivered. It appears that one Moore, a reporter connected with the mercantile agency of R. G. Dun & Co., in May, 1889, called at the factory of Fecheimer, Rau & Co. and inquired about their financial condition from a member of the firm. As a result of the interview, a statement, in writing, was received at the agency, purporting to show from their books an excess of assets over liabilities of $193,000 as of December, 1888. In August, 1889, the witness again called upon the firm for a similar purpose, and, on exhibition of the statement, was informed by a member thereof that since December, 1888, there had been no change in financial condi-